## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ANTONIO CASTILLO-PEREZ,**<br><br>      **Plaintiff,**<br><br>   **v.**<br><br>**THE CITY OF ELIZABETH, THE ELIZABETH POLICE DEPARTMENT, DETECTIVE KEVIN T. MCDONOUGH, DETECTIVE DANIEL GEDDES, SARGEANT TIMOTHY GEDDES, POLICE OFFICER CARMINE GIANETTA, POLICE OFFICER JORGE JOAQUIM, RONALD SIMON, UNITED STATES DRUG ENFORCEMENT AGENCY, FRANK TARRENTINO, SPECIAL AGENT WILLIAM STRENSKE, and THE UNITED STATES**<br><br>      **Defendants.** | Civ. No. 2:11-6958 (KM) (CLW)<br><br><br>**OPINION** |

**MCNULTY, U.S.D.J.:**

On November 28, 2011, the plaintiff, Antonio Castillo-Perez, filed a Complaint, Docket No. 1 ("Compl."), arising out of a 2010 arrest and detention. Originally assigned to the Hon. Dennis M. Cavanaugh, the matter was reassigned to me on August 1, 2012. (Docket No. 33). The Complaint asserts twelve causes of action against law enforcement agents and the federal and state governments, or government entities, that employ them. Such causes of action, brought under a specific Constitutional provision against the persons whose acts are complained of, are typically straightforward. Brought as more general due process claims or against government entities, however, they face significant legal barriers, such as sovereign immunity, which have not been overcome here. My decision herein as to the many dispositive motions filed by

1

defendants is intended to focus the case on its core allegations: that officers of the Elizabeth Police Department, in cooperation with two agents of the DEA, arrested and detained Castillo-Perez without probable cause, in violation of his rights under the Fourth Amendment and analogous State Constitutional provisions. Of course, I do not prejudge the merits; solely for purposes of these motions to dismiss or for judgment on the pleadings, *see* Fed. R. Civ. P. 12(b)(6) and 12(c), the allegations of the Complaint are accepted as true.

Currently before the Court are dispositive motions filed by the following defendants:

(a)     The United States Drug Enforcement Agency ("DEA") brings a motion to dismiss the Complaint on behalf of itself and the United States (Docket No. 22);

(b)     William Strenske and Frank Tarrentino of the DEA (the "DEA Agents") bring a motion to dismiss the Complaint, or, in the alternative, for summary judgment (Docket No. 23);[1]

(c)     Daniel Geddes brings a motion to dismiss the Complaint (Docket No. 28); Kevin T. McDonough brings a motion to dismiss the Complaint (Docket No. 31); Jorge Joaquim brings a motion to dismiss the Complaint, or, in the alternative, for summary judgment (Docket No. 32); Carmine Gianetta brings a motion to dismiss the Complaint, or, in the alternative, for summary judgment (Docket No. 34); and Timothy Geddes bring a motion to dismiss the Complaint (Docket No. 35). (D. Geddes, McDonough, Joaquim, Gianetta and T. Geddes are collectively referred to as the "Elizabeth Police Officers."); and

(d)     Acting Elizabeth Police Chief Ronald Simon ("Chief Simon"), the City of Elizabeth, New Jersey ("Elizabeth"), and the Elizabeth Police Department (the "Police Department") bring a motion to dismiss the Complaint (Docket No. 39).[2]

---

[1] The docket indicates that the individual DEA agents have been terminated as Defendants for the entirety of the case as of June 25, 2012. As discussed at n.4, *infra*, the United States was properly substituted as defendant, but only for the purposes of the Federal Tort Claims Act (Count XII), not the other claims. The Clerk is directed to correct the docket accordingly.

[2] Defendants D. Geddes, Joaquim, Gianetta, T. Geddes, McDonough, Simon, the City of Elizabeth, and the Elizabeth Police Department filed Answers before filing the motions now before the Court. The Court will exercise its discretion to treat these

The plaintiff, Castillo-Perez, through his counsel, has filed an omnibus opposition to these motions (Docket No. 37).[3]

For the reasons set forth below, Defendants' motions will be granted in part and denied in part. The claims that will remain are Counts I, II, III and VIII, to the extent they assert federal and state constitutional claims against the Elizabeth Police Officers, and Count IX, to the extent it asserts a Fourth Amendment *Bivens* claim against the DEA Agents. I will administratively terminate without prejudice the motions for summary judgment. They may be refiled or reinstated upon completion of targeted discovery to explore the circumstances surrounding the stop and arrest that gave rise to this action.

## I.    BACKGROUND

Solely for purposes of the motions to dismiss or for judgment on the pleadings, I base this statement of facts on the allegations of the Complaint. *See* Section II.A.1, *infra*. They have not yet been tested by any fact finder.

On June 8, 2010, Sabin Sanchez invited Castillo-Perez to take a ride with him to Elizabeth, New Jersey, and Castillo-Perez accepted. Compl. ¶ 17. Later that day, Castillo-Perez was a passenger in a motor vehicle operated by Sanchez, en route from Brooklyn, New York to Elizabeth. Compl. ¶ 4. Sanchez told Castillo-Perez that he planned to visit a house on Jersey Avenue in Elizabeth. When they arrived, Castillo-Perez did not visit the house with Sanchez, but instead went to a nearby restaurant. When Sanchez was ready to leave, he called Castillo-Perez, and both returned to the car to drive back to Brooklyn. *Id.* "Almost immediately thereafter, approximately six or more police officers" arrived in police vehicles, ordered Castillo-Perez out of Sanchez's car, and arrested him. *Id.* ¶ 5.

---

as motions for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c). *See Newton v. Greenwich Twp.*, 12-CV-238 RMB/KMW, 2012 WL 3715947, at *1, n.1 (D.N.J. Aug. 27, 2012) (citing *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (explaining that the court has the discretion to construe post-answer 12(b)(6) motions as having been brought under Rule 12(c)). A court has discretion to entertain a Rule 12(c) motion even before all defendants have filed an answer, as long as no prejudice to any party would result. *Id.* (citations omitted).

[3] This opposition brief, Docket No. 37, was filed before the filing of the motion to dismiss filed by Ronald Simon, the City of Elizabeth, and the Elizabeth Police Department (Docket No. 39). No opposition was filed specifically addressing this motion.

Castillo-Perez "has very little command of English." *Id.* ¶ 21. He alleges that certain of the Elizabeth Police Officers shouted commands that he could not comprehend. They physically removed him from the car and certain officers punched him in the kidney. He was then handcuffed. Officers then opened the trunk of Sanchez's vehicle and removed a box, which was later found to contain narcotics. The officers also removed from a "pocket or pouch" attached to the back of the driver's seat a black bag that contained money. Castillo-Perez alleges that, at the time, he did not know what was inside the box or the bag. *Id.* ¶ 22, 23.

Castillo-Perez was arrested and imprisoned from June 8, 2010, through December 13, 2010, a period of 189 days. *Id.* ¶ 26. He was charged with several offenses: Possession of a Controlled Dangerous Substance with Intent to Distribute (N.J. Stat. Ann. 2C:35:5a(1); 2C:35-5b(1)); Possession of a Controlled Dangerous Substance (N.J. Stat. Ann. 2C:35-10a(1)); and Obstructing the Administration of Law (N.J. Stat. Ann. 2C:29-1). *Id.* ¶¶ 26-27 (citing Union County Indictment No. 10-10-010561). On April 11, 2011, however, the Indictment was dismissed. *Id.* ¶ 27.

Castillo-Perez filed this action on November 28, 2011. He brings claims pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988, as well as the New Jersey Civil Rights Act and the federal Tort Claims Act.

He names as defendants the following:

The City of Elizabeth ("Elizabeth"), sued as a municipal entity;

The City of Elizabeth Police Department (the "Elizabeth Police Department"), sued as the public employer of certain individual defendants;

Defendant Ronald Simon, the Chief of Police for Elizabeth ("Chief Simon"), sued as a policymaker with respect to training, supervision, and discipline of police officers;

Detective Kevin T. McDonough, Sergeant Daniel Geddes, Sergeant Timothy Geddes, Police Officer Carmine Gianetta, and Police Officer Jorge Joaquim (the "Elizabeth Police Officers");

The United States Drug Enforcement Agency ("DEA");

Group Advisor Frank Tarrentino and Special Agent William Strenske, DEA Newark Field Division (the "DEA Agents").

The Complaint asserts the following claims:

(1) violation of Plaintiff's Fourth Amendment rights pursuant to 42 U.S.C. § 1983 against Defendants Elizabeth, the Elizabeth Police Department, and the Elizabeth Police Officers (Count I);

(2) violation of the New Jersey Civil Rights Act/State Constitutional Claim against Defendants Elizabeth, the Elizabeth Police Department, and the Elizabeth Police Officers (Count II);

(3) False Arrest and Illegal Imprisonment against the Elizabeth Police Officers (Count III);

(4) violation of 42 U.S.C. Section 1983 against Defendants Elizabeth and the Elizabeth Police Department (*Monell* Claim) (Count IV);

(5) violation of 42 U.S.C. Section 1981 against all Defendants (Count V);

(6) violation of 42 U.S.C. Section 1985 against all Defendants (Count VI);

(7) violation of 42 U.S.C. Section 1986 against all Defendants (Count VII);

(8) Malicious Prosecution against Elizabeth, the Elizabeth Police Department, and the Elizabeth Police Officers (Count VIII);

(9) Fourth Amendment *Bivens* Claim against the DEA and the DEA Agents (Count IX);

(10) Fifth Amendment Equal Protection *Bivens* Claim against the DEA Agents (Count X);

(11) Fifth Amendment Due Process *Bivens* Claim against the DEA Agents (Count XI); and

(12) Federal Torts Claim Act ("FTCA"), 28 U.S.C. §1346(b) against the United States (Count XII).[4]

---

[4] The Federal Tort Claims Act claim was brought against the DEA Agents and the DEA. The United States, which is the proper defendant for a FTCA claim, has submitted a Notice of Substitution, Docket No. 21, and Certification of the Scope of Employment, Docket No. 22-3 at 1, pursuant to 28 U.S.C. § 2679(d)(1) and (2), certifying that Tarrentino and Strenske were acting within the scope of their employment by the United States at the time of the conduct alleged in the complaint. Accordingly, I deem the United States to be substituted for the DEA Agents as defendant for Count XII only. *See* 28 U.S.C. §2679(d)(1); *Osborne v. Haley*, 549 U.S.

## II. DISCUSSION

### A. Legal Standards

#### 1. Motion to dismiss or for judgment on the pleadings

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (traditional "reasonable inferences" principle not undermined by *Twombly, see infra*).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

The same standard applies to a motion for judgment on the pleadings pursuant to Rule 12(c), made after the filing of any responsive pleading. Federal Rule of Civil Procedure 12(h)(2), "provides that a defense of failure to state a claim upon which relief can be granted may also be made by a motion for judgment on the pleadings." *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). Accordingly, when this defense is raised in the context of a Rule 12(c) motion, the Rule 12(b)(6) standard applies. *Id.*

---

225, 230 (2007) ("Upon the Attorney General's certification, the employee is dismissed from the action, and the United States is substituted as defendant in place of the employee.").

## 2. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 248; *Kreschollek v. S. Stevedoring Co.,* 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania,* 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Delaware River Port Auth. of Pa. & N.J.,* 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson,* 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.,* 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.,* 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex,* 477 U.S. at 322–23).

## B. Threshold Issues as to Certain Government Entities

### 1. Claims against the DEA (Counts V, VI, VII, & IX)/ Sovereign Immunity

Castillo-Perez has brought against "the defendants" generally a number of claims, including constitutional tort claims under *Bivens* and various sections of the federal civil rights statutes. Among "the defendants" is the DEA. The United States argues that all claims against the DEA must be dismissed. Sovereign immunity, it argues, bars equitable and legal remedies against the United States, and the DEA, as a federal agency, partakes of that immunity.[5]

Under the doctrine of sovereign immunity, "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell,* 463 U.S. 206, 212 (1983). "The conditional sovereign immunity of the United States extends to its branches and agencies." *Biase v. Kaplan,* 852 F. Supp. 268, 277 (D.N.J. 1994). Consent to suit must be express in order to constitute a waiver of sovereign immunity. *Id.* at 277-78 (citing, *e.g., Franchise Tax Board v. United States Postal Service,* 467 U.S. 512, 517–18, 104 S.Ct. 2549, 2552–53, 81 L.Ed.2d 446 (1984) (agency immunity); *Library of Congress v. Shaw,* 478 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986) (waiver must be express)).

The United States, whether on behalf of itself or its agencies such as DEA, has not consented to be sued under, *e.g.,* 42 U.S.C. §§ 1981, 1983, 1985, and 1986. None of the provisions of the Civil Rights Act "provide a basis for an action against the United States or a Federal agency." *Id.* at 280. Likewise, *Bivens* provides a cause of action only against individual federal agents, not agencies. *See F.D.I.C. v. Meyer,* 510 U.S. 471, 472 (1994) ("The logic of *Bivens* itself does not support the extension of *Bivens* from federal *agents* to federal

---

[5] The Eleventh Amendment "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction" over actions against a State. *Blanciak v. Allegheny Ludlum Corp.,* 77 F.3d 690, 693 n. 2 (3d Cir. 1996) (citing *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 98-100 (1984) (holding that "the principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III"). Therefore, the defense of sovereign immunity is properly raised as a jurisdictional defect under Fed. R. Civ. P. 12(b)(1). Because this particular motion is directed as a matter of law to the face of the Complaint, the distinction between Rule 12(b)(1) and Rule 12(b)(6) or 12(c) has no practical consequences here.

*agencies.*") (emphasis in original).[6] Indeed, *Bivens* itself, when conferring a constitutional cause of action, held "that the doctrine of sovereign immunity bars a direct constitutional action against the Federal agency itself." *Biase v. Kaplan*, 852 F. Supp. at 279 (citing *Bivens*, 403 U.S. at 410).

Plaintiff's omnibus opposition does not address these sovereign immunity arguments with respect to DEA. I find them meritorious. Counts V, VI, VII, & IX will therefore be dismissed as against the DEA.

### 2. Elizabeth Police Department/Capacity to be sued

The Elizabeth Police Department is a department of the City of Elizabeth. *See* http://www.elizabethnj.org/city-council/departments. For purposes of this action, it is not an entity that may be sued separately. *See Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997) (Court "treat[s] the municipality and its police department as a single entity for purposes of section 1983 liability"); N.J.S.A. 40A:14–118 (providing that New Jersey police departments are "an executive and enforcement function of municipal government"). I will therefore treat claims asserted against the Elizabeth Police Department as having been asserted against the City of Elizabeth only.

### 3. *Monell* Section 1983 Claim Against Elizabeth and Chief Simon (Count IV)

In Count IV of the Complaint, Castillo-Perez seeks to hold the City of Elizabeth liable under 42 U.S.C. § 1983 for the constitutional torts of its employees. Municipal bodies sued under Section 1983 are not entitled to absolute immunity. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 701 (1978). Neither, however, can they be held liable solely under the doctrine of *respondeat superior*. For a municipality to be liable, the constitutional violation must have occurred pursuant to an official municipal policy or custom. *Id.*; *Bielevicz v. Dubinon*, 915 F.2d 845, 849-50 (3d Cir. 1990).

A government policy and a government custom are distinct. *Bielevicz*, 915 F.2d at 850. A "policy" may be found when a decision-maker with the requisite final authority issues an official edict, proclamation, or policy statement. *Id.* (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d

---

[6] The United States argues that Count X and Count XI, too, should be dismissed as against the DEA. If those claims were asserted against the DEA, it is likely that sovereign immunity would bar them. It appears, however, that those Counts are asserted only against the individual DEA Agents, not against the DEA.

Cir. 1990); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). A "custom" may be found where "a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citing *Andrews*, 895 F.2d at 1480). Whether alleging a policy or custom, the plaintiff must show that an official with the necessary authority is responsible for either the "affirmative proclamation of a policy or acquiescence in a well-settled custom." *Id.* (citing *Andrews*, 895 F.2d at 1480). Finally, the plaintiff must show that the municipal policy or custom was the proximate cause of the injuries suffered. *Id.*

Derivative "municipal policy" liability may stem from a failure to properly train personnel. Recently, in *Thomas v. Cumberland County,* No. 12-3959, 12-3959, 2014 WL 1395666 (3d Cir. April 11, 2014), the Court of Appeals helpfully summarized the elements of such a "failure-to-train" claim:

> Where the policy "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) ("*Canton*")). Additionally, "the identified deficiency in a city's training program must be closely related to the ultimate injury;" or in other words, "the deficiency in training [must have] actually caused" the constitutional violation. *Canton*, 489 U.S. at 391.

*Id.* at *4, slip op. at 10.

"Ordinarily, '[a] pattern of similar constitutional violations by untrained employees' is necessary 'to demonstrate deliberate indifference for purposes of failure to train.'" *Connick v. Thompson*, -- U.S. --, --, 131 S. Ct. 1350, 1360 (2011)." *Id.,* slip op. at 12. Ordinarily, but not always:

> Nevertheless, the Supreme Court posited in *Canton* that in certain situations, the need for training "can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights" even without a pattern of constitutional violations. 489 U.S. at 390 n.10. The Court offered a hypothetical example of this "single-incident" failure-to-train liability. Because "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons," if the city arms the officers with firearms, "the need to train officers in the constitutional limitations on the use of deadly force" is "so

10

obvious" that a failure to provide such training could provide a basis for single-incident municipal liability. *Id.*

*Id.* at *5, slip op. at 12.

Here, Castillo-Perez alleges that, prior to the incident, Elizabeth, the Elizabeth Police Department, and Police Chief Simon "developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of citizens." Compl. ¶ 51. Further, he alleges that it was the "policy and/or custom of the City of Elizabeth Police Department to inadequately supervise, train, discipline, sanction or otherwise directs its police officers . . . thereby failing to adequately discourage further constitutional violations . . . ." *Id.* ¶ 52. Therefore, according to Plaintiff, the department encouraged or otherwise tolerated the unlawful conduct of the Defendant Police Officers. *Id.* ¶¶ 53–54.

These allegations may well be sufficient to set forth the *legal* elements of "policy," "custom" or failure-to-train claim. They are so devoid of facts, however, as to fail the test of *Twombly* and *Iqbal*. (*See* p. 5, *supra*.) The allegations of the Complaint merely recite the legal elements of a municipal "policy" liability claim. No such policy is specifically identified in the Complaint. *See Bielevicz*, 815 F.2d at 851. Nor does Castillo-Perez identify a particular "custom." Nor does he state a single fact in support of his allegation that Elizabeth failed to train its police officers. Nor does he specify the particular manner in which such training supposedly fell short. Count IV of the Complaint consists of nothing but legal boilerplate—precisely the kind of "formulaic recitation of the elements of a cause of action" that was held inadequate in *Twombly*, 550 U.S. at 555. As to the City of Elizabeth, the motion to dismiss Count IV will be granted.

A supervisor, such as a chief of police, may be held liable under Section 1983 if that supervisor was "involved personally, meaning through personal direction or actual knowledge and acquiescence, in the wrongs alleged." *McKenna v. City of Philadelphia*, 582 F.3d 447, 460 (3d Cir. 2009) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Delbridge v. Schaeffer*, 238 N.J. Super 323, 354, 569 A.2d 872, 887–88 (Ch. Div. 1989) (applying personal involvement standard in tort claim against state officials and agencies).

The Complaint is less than clear as to what liability is attributed to Chief Simon. At any rate, I find that the Complaint fails to state a plausible factual

claim as to his supervisory liability. Count IV alleges generally that, "[p]rior to June 8, 2010 the City of Elizabeth Police Department and Police Chief Simon developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of citizens, which caused the violation of plaintiff's rights." Compl. ¶ 51. That is the sole substantive allegation that even mentions Chief Simon.[7] This is a recitation of legal elements; it contains no factual allegations of any kind. There is no factual allegation that links Chief Simon to the violations alleged in the Complaint. To the extent that Count IV is directed against Simon, it will be dismissed.

The motion to dismiss Count IV, and all other Section 1983 claims to the extent they seek to impose vicarious, municipal, or supervisory liability on Elizabeth or Chief Simon, will therefore be granted.

### C.   Constitutional Claims Against State Defendants

#### 1. Constitutional Claims against State defendants for False Arrest, False Imprisonment, & Malicious Prosecution (Counts I, II, III, & VIII)

Subject to the threshold dismissals of defendants in Section II.B, *supra*, the claims asserted in Counts I, II, III, and VIII will survive. Each hinges on the existence, or not, of probable cause. Defendants have raised cogent arguments, but a ruling as to probable cause would be premature. I will first allow Castillo-Perez to conduct limited discovery as to the circumstances surrounding the stop and the arrest. Because many of the critical facts are in Defendants' possession, I will reserve a probable cause determination until the parties have completed discovery on those factual issues.

a. Counts I, II, III and VIII and arguments for dismissal

i. Counts I & III

Counts I and III appear on their face to raise the kind of claims appropriately pursued under Section 1983. Count I is brought pursuant to 42

---

[7] The title of Count IV names only Elizabeth and its Police Department. Setting aside the caption and the introductory paragraphs, the Complaint's only substantive reference to Chief Simon occurs in paragraph 51, quoted in text, above. Out of caution, I have analyzed the claim as to both the municipality and Chief Simon.

U.S.C. § 1983 against Elizabeth, the Elizabeth Police Department,[8] and the Elizabeth Police Officers. Count I alleges that these defendants deprived Plaintiff of his Fourteenth Amendment rights to due process, happiness, and liberty. Compl. ¶¶ 39–40. Count III, asserted only against the Elizabeth Police Officers, alleges that Castillo-Perez was illegally arrested and imprisoned, in violation of his "federal rights." Count III does not cite 42 U.S.C. § 1983, but I construe it as a Section 1983 constitutional claim.

"[T]o establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Gillispie v. City of Paterson*, CIV.A. 06-4416 (SRC), 2006 WL 2970470, at *2 (D.N.J. Oct. 16, 2006) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)).

"It is well-established in the Third Circuit that an arrest without probable cause is a constitutional violation actionable under § 1983." *Gillispie*, 2006 WL 2970470, at *3. To state a claim for false arrest under Section 1983, a plaintiff must allege: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *Id.* (citing *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)). "A false imprisonment claim under § 1983 which is based on an arrest made without probable cause is grounded in the Fourth Amendment's guarantee against unreasonable seizures." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) (citing *Barna v. City of Perth Amboy*, 42 F.3d 809, 820 (3d Cir. 1994)).

A Section 1983 claim of unlawful arrest or false imprisonment depends on the absence of probable cause. Defendants argue that there was probable cause to arrest and detain Castillo-Perez. They argue in the alternative that qualified immunity shields their actions, which were objectively reasonable.

### ii. Count II

Count II, brought against Elizabeth, the Elizabeth Police Department,[9] and the Elizabeth Police Officers, alleges that these defendants' acts of

---

[8] I have already dismissed the claims against Elizabeth and the Police Department on threshold grounds. *See* Section II.B.2 & 3, *supra.*

[9] Again, I have already dismissed the claims against Elizabeth and the Police Department on threshold grounds. *See* Sections II.B.2 and 3, *supra.*

discrimination, false arrest, and unlawful detention deprived Castillo-Perez of his rights under the New Jersey Constitution, including Article I, Section I;[10] Article I, Section 5;[11] and Article I, Section 7.[12] Count II is brought under the New Jersey Civil Rights Act, N.J.S.A. 10:6–2. Compl. ¶ 44.

"The New Jersey Civil Rights Act was modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured under the New Jersey Constitutions." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443–44. (D.N.J. 2011). This District has uniformly interpreted the Act in parallel with Section 1983. *Id.* Under the state-law doctrine of good faith immunity, which is analogous to the federal qualified immunity doctrine, "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J. Stat. Ann. § 59:3-3. The good faith immunity doctrine incorporates the same objective reasonableness standard that applies to Section 1983 claims. *See Wildoner v. Borough of Ramsey,* 162 N.J. 375, 387 (2000).

Defendants argue that the NJ Civil Rights Act claim should be dismissed on the same grounds as Counts I and III, the Section 1983 claims. The individual Elizabeth Police Officers also assert the defense of good faith immunity. They further contend that Castillo-Perez has failed to specify a constitutional violation, and maintain that the state law claims are barred because Plaintiff failed to comply with the notice provisions of the New Jersey Tort Claims Act, N.J.S.A. 59:8–8(a).

---

[10] Article One, Section One provides: "All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness."

[11] Article One, Section Five provides: "No person shall be denied the enjoyment of any civil or military right, nor be discriminated against in the exercise of any civil or military right, nor be segregated in the militia or in the public schools, because of religious principles, race, color, ancestry or national origin."

[12] Article One, Section Seven provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized."

### iii. Count VIII

Castillo-Perez brings Count VIII, titled "Malicious Prosecution," against Elizabeth, the Elizabeth Police Department,[13] and the Elizabeth Police Officers. These defendants, he alleges, caused false criminal accusatory instruments to be filed and testified falsely against him. Those acts, he alleges, were encouraged, aided, abetted, and incited by the DEA, through its Agents, Tarrentino and Strenske. (He does not appear, however, to name the DEA or the DEA Agents as defendants in this count.) Compl. ¶ 68. Count VIII, titled "malicious prosecution," could be taken as a state-law tort claim. It alleges, however, that defendants are liable under Section 1983 and the State Constitution, as well as New Jersey State common law. I discuss them all.

In order to prevail on a Constitutional claim of malicious prosecution, a plaintiff must demonstrate that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Bingnear*, 441 F. App'x 848, 851 (3d Cir. 2011) (quoting *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009)). Similarly, a New Jersey common law tort claim of malicious prosecution "requires proof: (1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." *Lind v. Schmid*, 67 N.J. 255, 262, 337 A.2d 365, 368 (1975) (citations omitted).

Whether founded on the Constitution or tort law, a malicious prosecution claim requires that probable cause be lacking. Defendants submit that, because there was probable cause to charge Castillo-Perez, this Count must be dismissed.

### b. Discovery is required to resolve the probable cause issue on the federal and state Constitutional claims

As outlined above, Counts I, II, and III present Constitutional claims premised on false arrest and false imprisonment, and Count VIII alleges both

---

[13] I note again that I have dismissed the claims against Elizabeth and its Police Department on threshold grounds. *See* Sections II.B.2 and 3, *supra*.

Constitutional and state tort claims premised on malicious prosecution. All depend on the defendants' having acted without probable cause. Stated another way, the presence of probable cause would defeat these federal and state Constitutional and tort claims.[14] *See Revell v. Port Auth. of New York, New Jersey*, 598 F.3d 128, 137 n.16 (3d Cir. 2010) (citation omitted). Qualified or good faith immunity may also shield certain defendants from liability for damages. In short, "police officers who . . . had probable cause for their actions or 'who reasonably but mistakenly conclude that their conduct comports with the requirements of the Fourth Amendment are entitled to immunity.'" *Garlanger v. Verbecke*, 223 F. Supp. 2d 596, 606 (D.N.J. 2002) (quoting *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1987)). All of these issues depend on probable cause, or perhaps the reasonable perception thereof, and probable cause depends on the facts surrounding the stop and arrest.

"An arrest was made with probable cause if 'at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that [the suspect] had committed or was committing an offense.'" *Wright v. City of Philadelphia*, 409 F.3d 595 (3d Cir. 2005) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

Probable cause can, in some cases, present a complex factual issue. It is "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usually, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). As to qualified immunity, too, "if the historical facts material to [whether the actions of the officers were objectively reasonable] are in dispute . . . there [will] be an issue for the jury." *Sharrar*, 128 F.3d at 828.

---

[14] Defendants also argue that, in addition to the surrounding circumstances, a Union County grand jury indictment for crimes related to possession of heroin and obstruction of the administrative law is affirmative evidence of probable cause that, standing alone, is sufficient to defeat Castillo-Perez's claims here. An indictment may indeed be affirmative evidence of probable cause sufficient to defeat a Section 1983 claim for false arrest or malicious prosecution. *See Gaskins v. 17 Officers*, CIV. A. 09-1982 WJM, 2009 WL 4730189, at *6 (D.N.J. Dec. 4, 2009) ("[A] grand jury indictment is affirmative evidence of probable cause sufficient to defeat a claim of false arrest under § 1983.") (citing *Gatter v. Zappile*, 67 F. Supp. 2d 515, 519 (E.D. Pa. 1999), *aff'd*, 225 F.3d 648 (3d Cir. 2000)). In light of my finding that a ruling as to probable cause is premature absent any discovery, I will reserve a discussion of the indictment until the parties have completed focused discovery.

16

I do not mean to suggest, however, that the issues of qualified immunity or probable cause inevitably require trial; far from it. The Supreme Court has directed that the issue of qualified immunity be addressed "at the earliest possible stage in litigation." *Hunter v. Bryant,* 502 U.S. 224, 227 (1991). And the issue of probable cause tends to turn, not on all of the facts of the case, but on the limited information available to the officers at the time. The plaintiff's actual guilt or innocence of the offense is not strictly material to the issue of probable cause; "the validity of the arrest does not depend on whether the suspect actually committed a crime." *Michigan v. DeFillippo,* 443 U.S. 31, 36 (1979); *see also Wilson v. Russo,* 212 F.3d 781, 783 (3d Cir. 2000). While probable cause entails more than mere suspicion, it does "not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands." *Gerstein v. Pugh,* 420 U.S. 103, 121 (1975). Where it can be established what information the officers possessed, the issue of probable cause becomes a legal one for the Court to decide. *See Wright, supra* (deciding the issue on summary judgment); *Trabal v. Wells Fargo Armored Service Corp.,* 269 F.3d 243 (3d Cir. 2001); *Orsatti v. New Jersey State Police,* 71 F.3d 480 (3d Cir. 1995).

In this case, for purposes of the motions to dismiss, I find the factual allegations of the Complaint and answers to be too sketchy to permit a proper assessment of the potentially dispositive issues of probable cause and qualified or good faith immunity. It is true, of course, that several Defendants have also filed motions in the alternative for summary judgment. I think that summary judgment would be premature now, because those motions were filed without the benefit of any discovery. *See Curley v. Klem,* 298 F.3d 271, 278 (3d Cir. 2002 ("Just as the granting of summary judgment is inappropriate when a genuine issue exists as to any material fact, a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis."). Further factual development is required.

Here, a confidential tip led to a stop and a search, from which flowed the arrest, detention, and indictment of Castillo-Perez. As to these matters, the Defendants are in control of many of the material facts.[15] I will afford the

---

[15]  Because I believe summary judgment would be premature on the current state of the record, I overlook Castillo-Perez's failure to respond to the Statement of Undisputed Material Facts filed by the Elizabeth Police Officers. I caution all parties that, once discovery has taken place, I will require compliance with this Court's procedures regarding motions for summary judgment.

parties the opportunity for limited factual discovery as to the circumstances surrounding the initial stop and the arrest before considering summary judgment. I will therefore, with one exception, as described in part c, below, deny the motions to dismiss or for judgment on the pleadings, and will administratively terminate the motions for summary judgment, subject to refiling or reinstatement upon completion of this targeted discovery.

c. The state-law malicious prosecution tort claim will be dismissed as to Elizabeth and its Police Officers

Elizabeth and the Elizabeth Police Officers invoke the notice requirement of the New Jersey Tort Claims Act ("NJTCA"), *see* N.J.S.A. 59:8-8, as grounds for dismissal of Count VIII, insofar as it asserts the state common law tort of malicious prosecution.[16] A state malicious prosecution claim is "subject to the notice requirements of the [NJ]TCA." *Williams v. City of Elizabeth*, No. 08 Civ. 5113, 2010 WL 3636238, at *12 (D.N.J. Sept. 9, 2010) (citing *Velez v. City of Jersey City*, 180 N.J. 284, 293, 850 A.2d 1238, 1244 (2004) (holding that the Tort Claims Act notice provision applies to common law torts based on intentional or outrageous conduct)).

"The [NJ]TCA 'regulates both the substantive liability o[f] public entities as well as the procedural requirements which must be observed when bringing a claim against a public body.'" *Id.* (quoting *Martin v. Twp. of Rochelle Park*, 144 N.J Super. 216, 219, 365 A.2d 197, 199 (App. Div. 1976) (superseded by statute on other grounds)). The NJTCA provides that "[n]o action shall be brought against a public entity under this act unless a claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J. Stat. Ann. § 59:8–3. Before filing a complaint against a public entity or its employees for injury or damages to person or property, and within ninety days of the claim's accrual, a plaintiff must submit a "notice of claim" to the public entity. N.J. Stat. Ann. § 59:8–8. Failure to provide timely notice of claim subjects a plaintiff's claim to dismissal. *Williams*, 2010 WL 3636238, at *13 (citing N.J. Stat. Ann. § 59:8–7).[17] Castillo-Perez's malicious

---

[16] That NJTCA notice provision does not apply to Section 1983 claims. *See Felder v. Casey*, 487 U.S. 131, 132 (1988). Nor does it apply to claims under the New Jersey Civil Rights Act. *Owens v. Feigin,* 194 N.J. 607, 609, 947 A.2d 653, 654 (2008).

[17] Specifically, the statute provides:

A claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided in this chapter1 not

prosecution tort claim accrued on April 11, 2011, the date that the charges were dismissed. *See* Compl. ¶ 27. The 90-day deadline for filing a notice of claim therefore expired on July 10, 2011. The Complaint was filed on November 28, 2011. William R. Hozapfel, City Attorney for the City of Elizabeth, certifies that, as of July 25, 2012, Castillo had never filed any tort claim notice, whether timely or untimely, with the City of Elizabeth. Docket No. 32-5. Castillo-Perez does not allege to this day that he ever filed a notice of claim, and his opposition brief does not describe any attempt to provide notice to Elizabeth. Nor does the record contain any indication of such notice. To the extent that it alleges the state law tort of malicious prosecution, Count VIII will be dismissed as to Elizabeth and its employees, the Elizabeth Police Officers.

### D.   Constitutional and Tort Claims against Federal Defendants (Counts IX, X, XI & XII)

#### 1.   Fourth Amendment *Bivens* claim (Count IX)

Under *Bivens v Six Unknown Named Agents*, 403 U.S. 388 (1971), a plaintiff may assert against an agent of the federal government an implied cause of action for violation of federal rights, even where no statute authorizes suit. In Count IX, Castillo-Perez alleges that two federal agents, DEA Agents Tarrentino and Strenske, "stopped, detained, investigated, seized and/or arrested plaintiff intentionally and knowingly and without probable cause and/or reasonable suspicion, in violation of the Fourth Amendment." Compl. ¶

---

later than the 90th day after accrual of the cause of action. After the expiration of six months from the date notice of claim is received, the claimant may file suit in an appropriate court of law. The claimant shall be forever barred from recovering against a public entity or public employee if:

> a. The claimant failed to file the claim with the public entity within 90 days of accrual of the claim except as otherwise provided in N.J.S.59:8-9; or

> b. Two years have elapsed since the accrual of the claim; or

> c. The claimant or the claimant's authorized representative entered into a settlement agreement with respect to the claim.

N.J. Stat. Ann. § 59:8-8.

76.[18] The Complaint alleges that the DEA Agents "worked together with" the Elizabeth Police Officers "in carrying out each of the illegal activities culminating in plaintiff's false arrest and false imprisonment . . . ." Compl. ¶ 6. Count IX parallels the Section 1983 claims against the Elizabeth Police Officers discussed in the section immediately preceding this one. Like the Elizabeth Police, the DEA Agents respond that there was probable cause for the arrest and that qualified immunity applies.[19] For the reasons expressed in Section II.C.1.b, *supra,* I will deny the motions to dismiss Count IX without prejudice to

---

[18] It is not clear from the Complaint or Plaintiff's opposition brief whether his Fourth Amendment claims include a claim for unreasonable search and seizure, in addition to false arrest and false imprisonment. *See* Docket No. 37 at 22. I discuss it briefly. Because Castillo-Perez was a mere passenger in Sanchez's vehicle, he would lack standing to challenge an illegal search of the vehicle. *See Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978) (holding that there is no legitimate expectation of privacy where the area searched is in control of a third party); *United States v. Baker*, 221 F.3d 438, 441–42 (3d Cir. 2000) ("It is clear that a passenger in a car that he neither owns nor leases typically has no standing to challenge a search of the car."). In fact, Castillo-Perez concedes that Sanchez, as owner of the vehicle, consented to the search, seemingly eliminating any basis for a claim that the search was illegal. Docket No. 37 at 18.

[19] The DEA Agents also argue that Castillo-Perez has failed to allege that they were personally involved in his arrest. *See Dacchille v. Woodbridge Twp.*, CIV.A. 10-5504 WJM, 2011 WL 4809956, at *5 (D.N.J. Oct. 7, 2011) (citing *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir.1988)). They read the Complaint to allege that the DEA Agents did not arrive on the scene until after the state officers had handcuffed Castillo-Perez. *See* Compl. ¶¶ 5, 21, 22. The Complaint also alleges, however, that the DEA Agents "worked together with" the Elizabeth Police Officers "in carrying out each of the illegal activities culminating in plaintiff's false arrest and false imprisonment . . . ." *Id.* ¶ 6. It also alleges that the "police officers" and "law enforcement officials," presumably a reference to the Elizabeth Police Officers and DEA agents, opened the vehicle's trunk, searched, and removed a box from the trunk. *Id.* ¶ 22. According to Castillo-Perez, the "defendant police officers/federal agents" were the ones who "seized, interrogated and searched the plaintiff and his person without a warrant." *Id.* ¶ 29. He also alleges that the "individual officers/federal agents assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events." *Id.* ¶ 35. These allegations might or might not hold up in light of discovery. But reading the Complaint, as I must, in the light most favorable to the Plaintiff, I must reject this particular ground for dismissal.

the renewal of a summary judgment motion at the close of targeted discovery on the issue of probable cause.

### 2. Fifth Amendment Equal Protection *Bivens* Claim (Count X)

Count X of the Complaint alleges that "Defendant DEA Officers Tarrentino and Strenske stopped, detained, investigated, searched, seized, and/or arrested plaintiff knowingly and intentionally on the basis of plaintiff's race, ethnicity, and perceived national origin in violation of his right to equal protection." Compl. ¶¶ 79–80. A valid Equal Protection claim must contain enough facts to show purposeful discrimination. *Bradley v. United States*, 164 F. Supp. 2d 437, 445 (D.N.J. 2001), *aff'd*, 299 F.3d 197 (3d Cir. 2002) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) ("To make out a viable claim for a violation of equal protection rights, a plaintiff must demonstrate purposeful discrimination.")). Here, the plaintiff must allege that he was treated differently from others similarly situated and that the disparate treatment was attributable to his race or ethnicity. *Id.*

The DEA Agents argue that Castillo-Perez has failed to sufficiently plead a Fifth Amendment Equal Protection claim. In *Iqbal*, *supra*, the Supreme Court dismissed the plaintiff's conclusory assertion that the defendants mistreated him "solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." The Court found that these allegations were not plausible and factual, but rather constituted a mere "formulaic recitation of the elements" of a discrimination claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009) (citing *Twombly*, 550 U.S. at 555). Likewise, Castillo-Perez has failed to allege factually that similarly situated individuals outside of his protected class were treated any differently. *See Fennimore v. Lower Twp.*, No 09 Civ. 2090, 2011 WL 1705599, at *6 n.6 (D.N.J. May 4, 2011) ("Plaintiff offers no facts by which a reasonable fact finder could infer that Plaintiff received different treatment from any other similarly situated individual."). Castillo-Perez's allegations that the acts of the DEA agents were motivated by his race, ethnicity, or national origin are strikingly similar to the "bald assertions" dismissed by the Court in *Iqbal*. Castillo-Perez does not specifically address these matters in his opposition.

I will dismiss the Fifth Amendment Equal Protection claim against the DEA Agents because the Complaint does not allege facts sufficient to formulate a plausible claim. Count X is dismissed.

### 3. Count XI: Fifth Amendment Due Process *Bivens* Claim

In Count XI, Plaintiff alleges that the DEA Agents "assisted in arresting plaintiff and depriving plaintiff of his liberty in a manner that was without due process of law and was fundamentally unfair in the totality of the circumstances," in violation of the Fifth Amendment. Compl. at ¶ 82. The DEA Agents assert that this due process claim must be dismissed pursuant to the Supreme Court's "more-specific-provision" rule.[20] Under that rule, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 (1997). Specifically, where a plaintiff alleges that he has been subjected to unlawful conduct during an arrest, such a claim "is properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989).

The due process claim in Count XI must be analyzed under the Fourth Amendment. It arises from allegedly unlawful conduct during a stop of Castillo-Perez, which led to his subsequent arrest and imprisonment. The gist of the claim is that this was an unreasonable seizure without probable cause. The "more-specific-provision" rule therefore applies: such a claim is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." *Graham*, 490 U.S. at 388; *see Fennimore v. Lower Twp.*, 2011 WL 1705599 at *6 n.6 ("[T]o the extent Plaintiff's substantive due process claim arises from the Defendant Officers' alleged misconduct, such claim is analyzed under the more-specific provision' of the Fourth Amendment."); *Swedron v. Borough*, 08CV1095, 2008 WL 5051399, at *6 (W.D. Pa. Nov. 21, 2008) (dismissing a procedural and substantive due process claim where the gravamen of plaintiff's lawsuit was "clearly premised on a First and/or Fourth Amendment violation based upon his alleged malicious prosecution and arrest without probable cause").

This claim must be asserted under the Fourth Amendment; indeed, in Count IX, which is not being dismissed, the plaintiff has so asserted it. Accordingly, I will grant the DEA Agents' motion to dismiss the substantive due process claims of Count XI.

---

[20]  They also assert that the allegations of Count XI are conclusory and do not satisfy the standards of *Twombly/Iqbal*.  Because I dismiss this count on legal grounds, I do not reach that contention.

### 4. Federal Tort Claims Act claim against the United States (Count XII)/Failure to exhaust

The FTCA claim (Count XII) is properly viewed as being brought against the United States. *See* n.4, *supra.* The United States, as defendant, argues that the FTCA claim must be dismissed for failure to exhaust administrative remedies, a jurisdictional ground cognizable under Rule 12(b)(1), Fed. R. Civ. P.

Under the FTCA, a plaintiff may not bring suit against the United States "for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a). In other words, it is a jurisdictional prerequisite to a suit under the FTCA that a plaintiff have exhausted all administrative remedies. *See, e.g., Berenato v. United States,* CIV. 06-4355 (RBK), 2007 WL 2990626 (D.N.J. Oct. 9, 2007) (explaining that "[t]o bring suit under the FTCA, a plaintiff must first have 'presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency'" and that "the Third Circuit courts have construed this administrative exhaustion provision as a nonwaivable jurisdictional requirement") (citing *Bialowas v. United States,* 443 F.2d 1047, 1049 (3d Cir. 1971) (citation omitted); *Kozel v. Dunne,* 678 F. Supp. 450, 453 (D.N.J. 1988)). "The statutory language is clear that a court does not have jurisdiction before administrative remedies have been exhausted, and a court must dismiss any action that is initiated prematurely." *Id.* (citing *Wilder v. Luzinski,* 123 F.Supp.2d 312, 313 (E.D. Pa. 2000) (citing *McNeil v. United States,* 508 U.S. 106 (1993); *Wujick v. Dale & Dale,* 43 F.3d 790, 793-94 (3d Cir.1994))).

Karen K. Richardson, Associate Chief Counsel of the Civil Litigation Section in the Office of Chief Counsel of the United States Department of Justice, Drug Enforcement Administration (DEA), has submitted a declaration that Castillo-Perez had not filed, let alone exhausted, an administrative claim with the DEA in connection with the facts underlying this case. Docket No. 22-2. Indeed, Castillo-Perez concedes that "he commenced this action without first exhausting the administrative remedies as set forth in the Federal Tort Claims Act." Docket No. 37-1 at 1 n.1. Accordingly, the FTCA claim will be dismissed for lack of jurisdiction.

23

### D.   Claims Against All Defendants Under 42 U.S.C. §§ 1981, 1985, and 1986

Finally, I discuss Counts V, VI, and VII, which assert violations of 42 U.S.C. §§ 1981, 1985, and 1986 against all defendants.[21]

### 1.   Count V: 42 U.S.C. § 1981

In Count V, Plaintiff alleges that all defendants' actions were motivated by racial animus and the desire to injure, oppress, and intimidate plaintiff because of his race or nationality, in violation of the Civil Rights Act, 42 U.S.C. § 1981. Compl. ¶¶ 56–59. Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. Subsection (c) of that statute provides that these rights "are protected against impairment by nongovernmental discrimination and impairment under the color of state law." *Id.*

First, this statute provides a cause of action only for "discrimination by private actors and discrimination under color of state law"; it does not "protect against discrimination under color of federal law." *Sindram v. Fox,* 374 F. App'x 302, 304 (3d Cir. 2010). The United States, the DEA, and the DEA Agents are all federal entities or agents, acting under color of federal law. Plaintiff appears to concede this point. *See* Docket No. 37 at 37. Count V is dismissed as to all federal defendants, including the DEA Agents.

The remaining defendants, State entities or agents, argue that Count V fails to assert facts sufficient to state a claim of discrimination under color of state law. They add that a Section 1981 claim can only be founded on discrimination related to property transactions and contract formation.

To state a cause of action under Section 1981, plaintiffs must plausibly allege that "(1) they are members of a racial minority; (2) defendants intended

---

[21] This discussion is subject to the earlier dismissal on threshold grounds of claims against the DEA, the City of Elizabeth, and the Elizabeth Police Department. *See* Section II.B, *supra.*

to discriminate on the basis of race; and [3] discrimination concerned a statutorily enumerated activity, such as the rights to make and enforce contracts or to purchase property." *Hickson v. Marina Assocs.*, 743 F. Supp. 2d 362, 376 (D.N.J. 2010) (citations omitted) (finding that the plaintiff did not "sufficiently allege or prove that, on the basis of race, he was deprived of a right to make or enforce a contract, to acquire and protect property, or any other right or activity associated therewith, as prescribed in Section 1981").

Count V fails to meet the standards of Fed. R. Civ. P 12(b)(6) and *Twombly/Iqbal*, because it asserts nothing more than conclusory allegations of discrimination. Indeed, Count V contains no supporting factual allegations at all. It is true that it incorporates by reference all of the preceding allegations of the Complaint. Those allegations, however, at best suggest an arrest and detention without sufficient cause. They contain no facts sufficient to make out a plausible claim that Castillo-Perez was deprived of a protected right or activity on the basis of race. Without more than mere recitations of legal conclusions, *see Twombly*, 550 U.S. at 555, a claim under 42 U.S.C. § 1981 cannot survive. I will therefore dismiss Count V in its entirety.

### 2.    Count VI: 42 U.S.C. § 1985

Count VI of the Complaint alleges that all defendants conspired "to violate the civil rights of plaintiff based on his race," in violation of 42 U.S.C. Section 1985. Compl. Count VI, ¶¶ 60–61. To allege a violation of Section 1985, a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quoting *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983)).

"A claim for conspiratorial liability 'must . . . contain supportive factual allegations.'" *Ivan v. Cnty. of Middlesex*, 595 F. Supp. 2d 425, 484 (D.N.J. 2009) (quoting *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989)). To state a claim, "[t]he factual allegations supporting the conspiracy claim may not be generalized or conclusory." *Id.* In *Ivan v. County of Middlesex*, Judge Walls observed that the Third Circuit applies a heightened pleading standard to Section 1983 and Section 1985 conspiracy claims. *Id.* ("The Third Circuit clearly stated that this heightened pleading requirement applies to both § 1983 and § 1985(3) conspiracy claims.") (citing *Startzell v. City of Philadelphia*, 533

25

F.3d 183, 205 (3d Cir. 2008) (holding that a conspiracy claim under Section 1983 or 1985 requires plaintiff to show a "meeting of the minds")); *see Russo v. Voorhees Twp.*, 403 F. Supp. 2d 352, 359 (D.N.J. 2005) ("Russo has failed to allege that there was ever an agreement between Detective Monahan and the other officers to deprive him of his civil rights. An agreement is a necessary component of a conspiracy.")).

The only substantive allegation in Count VI is that "[t]he acts of the defendants herein constitute a violation of the Civil Rights Act, 42 U.S.C. Section 1985, namely a conspiracy to violate the civil rights of plaintiff based on his race." Compl. ¶ 61. That is a legal conclusion, not a factual allegation. The allegations from earlier sections of the Complaint, incorporated by reference, do not suffice, either. True, they suggest concerted activity: Paragraph 6, for example, alleges that the "Elizabeth police officers named above worked together with the above-named DEA officers in carrying out illegal activities culminating in plaintiff's false arrest and false imprisonment." Compl. ¶ 6. Plaintiff also alleges that "at all times relevant the defendant Elizabeth police officers and DEA agents were engaged in a joint venture. The individual officers/federal agents assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events." Comp. ¶ 35.

What is missing, however, is the same thing that was missing from Count V: plausible factual allegations of intentional racial discrimination. The factual allegations of the complaint set forth at best an arrest and detention without probable cause.

Plaintiff has failed to allege any facts to suggest that there was any agreement, combination, or conspiracy to deprive him of his civil rights on the basis of race. I will dismiss Count VI.

### 3. Count VII: 42 U.S.C. § 1986

Count VII alleges that all defendants "had knowledge of the discrimination/violation of constitutional rights perpetrated on plaintiff and/or constitutional minorities . . . but neglected and failed to prevent said wrongful and illegal acts when they had the power to do so," in violation of 42 U.S.C. § 1986. Compl. ¶ 64.

Defendants argue that this claim must be dismissed because a Section 1986 claim is derivative; by definition it depends upon a viable Section 1985

26

claim. They also argue that this count is barred by the one-year statute of limitations that applies to claims under Section 1986.

Castillo-Perez does not provide any argument in opposition. I have already dismissed his claim under Section 1985, and I agree with Defendants that the Complaint does not state an independent claim under Section 1986. *See Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994) (explaining that, "by definition," a Section 1986 claim depends on "preexisting violation of § 1985); *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980) ("Because transgressions of [Section] 1986 by definition depend on a preexisting violation of [Section] 1985, if the claimant does not set forth a cause of action under the latter, its claim under the former necessarily must fail also.").

Count VII will therefore be dismissed.

## III. CONCLUSION

For the foregoing reasons Defendants' motions (Docket No. 22, Docket No. 23, Docket No. 28, Docket No. 31, Docket No. 32, Docket No. 34, Docket No. 35, and Docket No. 39) are granted in part and denied in part. Specifically:

1. Counts I, II, and III, are dismissed as to the City of Elizabeth and the City of Elizabeth Police Department;
2. Count IV is dismissed in its entirety;
3. Count V is dismissed in its entirety;
4. Count VI is dismissed in its entirety;
5. Count VII is dismissed in its entirety;
6. Count VIII is dismissed as to the City of Elizabeth and the Elizabeth Police Department insofar as it asserts malicious prosecution claims under 42 U.S.C. § 1983 and the New Jersey State Constitution, and is dismissed as to all Defendants insofar as it asserts the state common law tort of malicious prosecution;
7. Count IX is dismissed as to the DEA;
8. Count X is dismissed in its entirety;
9. Count XI is dismissed in its entirety; and
10. Count XII is dismissed in its entirety.

The claims that remain, then, are the following:

1. Counts I, II, and III, insofar as they allege claims of illegal arrest and false imprisonment under 42 U.S.C. § 1983 and the New Jersey State Constitution against the Elizabeth Police Officers (Defendants

McDonough, D. Geddes, T. Geddes, Gianetta, and Joaquim);

2. Count VIII, insofar as it asserts claims of malicious prosecution under 42 U.S.C. § 1983 and the New Jersey State Constitution against the Elizabeth Police Officers (Defendants McDonough, D. Geddes, T. Geddes, Gianetta, and Joaquim); and

3. Count IX, insofar as it asserts claims of illegal arrest and detention under *Bivens* and the Fourth Amendment against the DEA Agents (Defendants Tarrentino and Strenske).

An appropriate Order accompanies this Opinion and will be entered.

Dated: April 21, 2014

**KEVIN MCNULTY**
**United States District Judge**